[No. 8045. Department Two. Decided July 17, 1909.]

BRADLEY ENGINEERING AND MACHINERY COMPANY, *Respondent*, v. F. N. MUZZY, *Appellant*.[1]

CHATTEL MORTGAGES — FORECLOSURE — DECREE—DEFICIENCY. The right to a deficiency judgment in an action to foreclose a chattel mortgage depends upon statute.

SAME—STATUTES—CONSTRUCTION. The legislature did not intend to merely regulate the procedure, by Laws 1899, p. 85, § 2, authorizing deficiency judgments upon the foreclosure of a mortgage if consented to in the agreement, and denying a deficiency judgment when stipulated against in the mortgage, and the same will not be construed as prohibiting deficiency judgments in foreclosures of mortgages which contain no stipulation as to deficiencies; since that would simply drive the creditor to two actions to recover the debt, a result that would have been provided in express terms and not left to implication.

STATUTES—IMPLIED REPEAL. A new law covering the whole subject-matter of an old one repeals the latter by implication, although not necessarily inconsistent in some matters.

STATUTES — TITLE — SUBJECT — SUFFICIENCY—MORTGAGES—DEFICIENCY JUDGMENTS—SALES UNDER EXECUTIONS. The title to an act relating to sales under execution and orders of sale and the confirmation of sheriff's sales and redemption therefrom, is not sufficiently broad to include the subject-matter of Laws 1899, p. 85, § 2, which provides for or against the taking of deficiency judgments in an action to foreclose a mortgage when consented to in the agreement, or when stipulated against in the mortgage, as the case may be, and that the commencement of an independent action shall be a waiver of the mortgage security.

[1]Reported in 103 Pac. 37.

CHATTEL MORTGAGES—DECREE—DEFICIENCY JUDGMENT. Bal. Code, § 5880, expressly authorizes a deficiency judgment in an action to foreclose a chattel mortgage, where there is a separate obligation for the payment of the debt.

JUDGMENT—BAR—RES JUDICATA—MATTERS CONCLUDED. Where, in a chattel mortgage foreclosure, judgment for a deficiency upon a separate obligation for the debt is denied to the plaintiff, his remedy is by appeal from the judgment, which otherwise becomes *res judicata* and a bar to another action to recover any deficiency arising on a sale of the mortgaged property.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered January 14, 1909, upon findings in favor of the plaintiff, in an action to recover a deficiency upon a foreclosure sale, after a trial on the merits before the court without a jury. Reversed.

*Munter & Lovejoy*, for appellant.

*B. B. Adams* and *R. B. Blake*, for respondent.

RUDKIN, C. J.—On the 23d day of July, 1907, the defendant made, executed and delivered to the plaintiff his five certain promissory notes for the aggregated amount of $1,-936.26, payable on demand, with interest at the rate of eight per cent per annum from date until paid. At the same time, and for the purpose of securing the payment of said several promissory notes according to their terms, the defendant made, executed, and delivered to the plaintiff a chattel mortgage on certain personal property therein described. The notes and mortgage contained no agreement for a deficiency judgment in case of foreclosure, and no stipulation or agreement that a deficiency judgment should not be taken or that the mortgagee would look to the mortgaged property alone for the satisfaction of his claim.

On the 8th day of January, 1908, the plaintiff commenced an action in the superior court of Spokane county to foreclose this mortgage and for a deficiency judgment on the notes, and such proceedings were had in that action that, on the 26th day of May, 1908, judgment was given in favor

of the plaintiff and against the defendant for the sum of
$1,936.26, with interest and costs of suit, including $200 as
attorney's fees, foreclosing the mortgage and for any defi-
ciency that might remain after applying the proceeds of the
sale of the mortgaged property to the satisfaction of the
plaintiff's claim.  Afterwards, on motion for a new trial, the
court modified its decree by limiting the plaintiff to a fore-
closure of its mortgage and a sale of the mortgaged property,
and denying a judgment for any deficiency that might re-
main.  Execution issued on the modified decree, and the mort-
gaged property was sold by the sheriff, leaving a deficiency
of $1,676.80 after applying the proceeds of the sale of the
mortgaged property to the satisfaction of the plaintiff's de-
mand.

The present action was instituted to recover this deficiency.
To this action the defendant interposed two affirmative de-
fenses ; first, that the plaintiff was not entitled to a deficiency
judgment because its notes and mortgage contained no agree-
ment for such a judgment; and second, that the judgment in
the original action foreclosing the mortgage and denying a
deficiency judgment was a bar to the present action.  The
court below held against both of these defenses and gave
judgment for the deficiency according to the prayer of the
complaint.  From this judgment the present appeal is prose-
cuted.

The two questions presented by the affirmative defenses
are, first, Is the respondent entitled to a deficiency judgment
under the facts disclosed by this record? and second, if so,
should such judgment have been entered in the original action
to foreclose the mortgage?  The answer to the second ques-
tion must be found in our statutes, for the general rule is
that a court of equity has no power to enter a deficiency judg-
ment in an action to foreclose a mortgage, unless authorized
so to do by statute or rule of court.  9 Ency. Plead. & Prac.,
p. 451 *et seq.*  The statutory provisions determining the
right of the respondent to a judgment for a deficiency after

subjecting the proceeds of the sale of the mortgaged property to the satisfaction of its demand, and the procedure by which such judgment shall be obtained, are the following: Bal. Code, § 5880 (P. C. § 1284), relating to the foreclosure of chattel mortgages, provides that,

"The mortgagee or holder of the lien may proceed upon his mortgage or lien, [or] if there be a separate obligation in writing to pay the same secured by said mortgage or lien, he may bring suit upon such separate promise. When he proceeds on the mortgage, if there be a specific agreement therein contained for the payment of a certain sum, or there is a separate obligation for the said sum, in addition to a decree of sale of mortgaged property, judgment shall be rendered for the amount due upon said mortgage or other instrument, the payment of which is thereby secured. The decree shall direct the sale of the mortgaged property, and if the proceeds of sale be insufficient under the execution, the sheriff is authorized to levy upon and sell other property of the mortgage debtor, not exempt from execution, for the sum remaining unsatisfied."

Section 5888 (P. C. § 1277), relating to the foreclosure of mortgages on real estate contains similar provisions. Section 1 of the act of March 11, 1897, Laws 1897, p. 98, provides:

"That in all proceedings for the foreclosure of mortgages hereafter executed, or on judgments rendered upon the debts thereby secured, the mortgagee or assignee shall be limited to the property included in the mortgage."

This act was declared unconstitutional by this court in the case of *Dennis v. Moses*, 18 Wash. 537, 52 Pac. 333, 40 L. R. A. 302, and need not be further considered.

Section 2 of the act of March 8, 1899, Laws of 1899, p. 85, provided that:

"When there is an agreement of the judgment debtor for the payment of any sum of money secured by a mortgage or other lien, and a deficiency judgment is consented to in said agreement, the court may direct in the decree that the balance due and costs which may remain unsatisfied after the

sale of the property shall be satisfied from any property of the judgment debtor, and if any part of the judgment, interest and costs remains unsatisfied, the sheriff shall forthwith proceed to levy upon any property of the judgment debtor not exempt from execution, and all subsequent proceedings under said execution shall conform to the provisions of this act. The judgment creditor may also obtain from the clerk of the court execution or executions in the ordinary form for such deficiency: *Provided,* That in case of mortgage foreclosure where the mortgage contains a stipulation that no deficiency judgment shall be taken against the mortgagor, but that the mortgagee shall look to the mortgaged premises for satisfaction of his claim, no deficiency judgment shall be allowed. The commencement of an action for the recovery of a debt secured by mortgage not asking a foreclosure of the mortgage and brought before a foreclosure of the mortgage and sale thereunder, shall be, and be deemed to be, a waiver of the mortgage security; and this provision may not be waived or avoided by agreement contained in the mortgage or otherwise."

This latter section is plain in so far as it speaks, but its silence is enigmatic. It authorizes a deficiency judgment when stipulated for in the mortgage, it denies a deficiency judgment when stipulated against in the mortgage, but where the mortgage is silent the statute is also silent. Under his first affirmative defense, the appellant contends that this section prohibits deficiency judgments in all cases, unless expressly stipulated for in the mortgage, and the section is perhaps as susceptible to that construction as any other. The respondent, on the other hand, contends that the mortgagee is entitled to a deficiency judgment in the foreclosure action if so stipulated in the mortgage, but otherwise is relegated to an independent action at law to recover the deficiency. If this construction be adopted, the statute relates merely to a matter of procedure, and its only effect is to drive the creditor to two actions to recover his debt. We cannot believe that such was the legislative intent. A similar contention was made before this court in *Dennis v. Moses, supra,* where the

validity of the act prohibiting deficiency judgments was involved, but in answer to the contention the court said:

"The discussions in some of the briefs view the act as prescribing a method of procedure. Looking only to the title of the act and the older and later practice relating to the foreclosure of mortgages, this would in a measure be justified. If it could be held to apply to a matter of practice only and to prohibit deficiency judgments in actions to foreclose mortgages, and the right remains intact to enforce collection of the deficiency in a subsequent suit or to waive the security in the first instance and bring an ordinary action where there is a covenant to pay in the mortgage or a separate instrument contracting to pay, then the question comes up, what measure of public policy can it serve to prohibit a waiver? All agree that if it is a matter of public policy it cannot be waived by the parties; if a matter of private concern, it may be. It would be hard to conceive of any public interest that would be promoted in requiring a debtor to be subjected to the costs of two actions. The cases mentioned in 2 Jones on Mortgages, Sec. 1711, as to some states, would not apply here as such distinctions between the practice in equity and at law have been abolished for a long period, and it can hardly be supposed it was intended to take such a decisive step backwards and deprive the court of such power and compel a resort to the old common law procedure in this particular. It would be entirely foreign to the whole history and spirit of our jurisprudence. Consequently, if the power to enforce collection of a deficiency exists, the act as a method of procedure must be intended to confer a private benefit only, and its provisions can be waived. As limiting the method of procedure it is clearly worse than useless."

With this language fresh in mind, it seems to us that if the legislature of 1899 simply intended to regulate the procedure in mortgage foreclosures it would have said so in express terms, and not leave the matter to implication or construction. The act of 1897 was as susceptible to the construction contended for as is the act of 1899. What if any effect has § 2 of the act of 1899 upon § 5880, Bal. Code (P. C. § 1284), and other similar provisions contained in the code of civil procedure? The later act is either cumulative or it supersedes

the earlier laws on the same subject. Undoubtedly the general rule is that where a new law covers the whole subject-matter of an old one the old law is repealed by implication, though there may be some matters in the old law which are not necessarily obnoxious to any provision in the new. *Mansfield v. First Nat. Bank*, 5 Wash. 665, 32 Pac. 789, 999; *Seattle v. Clark*, 28 Wash. 717, 69 Pac. 407. Within this rule the act of 1899 would perhaps supersede Bal. Code, § 5880 (P. C. § 1284), and other like sections in the old law. To hold that the act of 1899 is merely cumulative would be to deny to it any effect whatever; for under earlier laws the mortgagee was entitled to a deficiency judgment where contracted for, and we apprehend was not entitled to a deficiency judgment where he agreed not to take one, or to look exclusively to his mortgage security.

If § 2 of the act of 1899 was intended to supersede and repeal § 5880 and other like provisions in earlier statutes, is it a constitutional enactment? Section 19, of art. 2, of the Constitution, declares that, "No bill shall embrace more than one subject which shall be expressed in the title." Is the subject-matter under consideration expressed in the title of the act, which reads as follows:

"An Act relating to the sales of property under execution, decrees, and orders of sale, and the confirmation of sheriff's sales, and redemption therefrom, and repealing an act passed by the legislature of the State of Washington March 2, 1897, approved March 10, 1897, entitled 'An act relating to the sale of property under execution and decrees, and the confirmations of sheriff's sales, and repealing sections 511, 512, 513, 514, 515, 516, 517, 518, 519, 520 and 521 of Vol. 2 of Hill's Annotated Statutes and Codes of the State of Washington, relating to the redemption of real estate sold on decrees of foreclosure and on execution' and declaring an emergency."

What is there in this title to indicate a purpose on the part of the legislature to legislate upon contract rights or upon matters of procedure? The title of the act is expressly

limited to execution sales, their confirmation and the right of redemption therefrom, and what has § 2 to do with these subjects? Absolutely nothing. Its subject-matter is as foreign to execution sales, their confirmation and redemptions therefrom as is the subject-matter of Bal. Code, §§ 5880 and 5888, which it is claimed are repealed thereby. In speaking of the title to legislative acts in his work, on Constitutional Limitations, p. 178, Judge Cooley says:

"As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the constitution has made the title the conclusive index to the legislative intent as to what shall have operation; it is no answer to say that the title might have been made more comprehensive, if in fact the legislature has not seen fit to make it so. Thus, 'an act concerning promissory notes and bills of exchange' provided that all promissory notes, bills of exchange, or *other instruments in writing*, for the payment of money, or for the delivery of specific articles, or to convey property, or to perform any other stipulation therein mentioned, should be negotiable, and assignees of the same might sue thereon in their own names. It was held that this act was void, as to all the instruments mentioned therein except promissory notes and bills of exchange; though *it is obvious* that it would have been easy to frame a title to the act which would have embraced them all, and which would have been unobjectionable. It has also been held that an act for the preservation of the Muskeon River Improvement could not lawfully provide for the levy and collection of tolls for the payment of the expense of *constructing* the improvement, as the operation of the act was carefully limited by its title to the future. So also it has been held that 'an act to limit the numbers of grand jurors, and to point out the mode of their selection, defining their jurisdiction, and repealing all laws inconsistent therewith,' could not constitutionally contain provisions which should authorize a defendant in a criminal case,

on a trial for any offense, to be found guilty of any lesser offense necessarily included therein. These cases must suffice upon this point; though the cases before referred to will furnish many similar illustrations."

See, also, *Percival v. Cowychee Wide Hollow Irr. Dist.*, 15 Wash. 480, 46 Pac. 1035; *Anderson v. Whatcom County*, 15 Wash. 47, 45 Pac. 665, 33 L. R. A. 137; *Howlett v. Cheetham*, 17 Wash. 626, 50 Pac. 522; *State ex rel. Henry v. Macdonald*, 25 Wash. 122, 64 Pac. 912; *Armour & Co. v. Western Construction Co.*, 36 Wash. 529, 78 Pac. 1106; *State ex rel. Nettleton v. Case*, 39 Wash. 177, 81 Pac. 554, 109 Am. St. 874, 1 L. R. A. (N. S.) 152; *State v. Clark*, 43 Wash. 664, 86 Pac. 1067.

For these reasons, we are of the opinion that Bal. Code, § 5880, is in no manner affected by § 2 of the act of 1899, and that the respondent was entitled to its deficiency judgment in the original foreclosure action under the provisions of that section. Such having been its right, its remedy was by appeal from the judgment denying a deficiency judgment, and not by the prosecution of another and independent action.

As said by the court in *Kenyon v. Wilson*, 78 Iowa 408, 43 N. W. 227:

"II. It is plain that the identical relief—a personal judgment against defendants—sought in these actions could have been recovered in the original foreclosure proceeding. If defendants were liable for the conversion of the property, a decree could have been entered requiring them to surrender it in execution; and, upon failure, execution could have issued against them for the value of the property. In case defendants had disposed of the property before judgment, the decree could have so provided that the execution should issue at once. There can be no doubt that plaintiff could have had full and adequate relief in the original action for the deprivation of any right which he did suffer or would suffer by reason of the appropriation of the mortgaged property to his own use.

"III. An adjudication is final and conclusive of all matters in a case which the parties could have presented to the court for adjudication in the case. The law hates a multiplicity of suits, and will not permit a plaintiff to split up

his demands, presenting one at a time, in separate successive actions. He must litigate all matters growing out of his causes of action upon which a remedy may be sought in one action. Thus he cannot seek a foreclosure of a mortgage in one action, and in a subsequent action ask for a personal judgment against the defendant. He could have recovered both remedies in the first action, and must be content with what he first recovers."

See, also, *Bunch v. Pierce County*, 53 Wash. 298, 101 Pac. 874.

The judgment in the foreclosure action is, therefore, *res adjudicata*, and the judgment in this action must be reversed with directions to dismiss the action. It is so ordered.

CROW, PARKER, and DUNBAR, JJ., concur.